2015 BNH 009
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                                                      Bk. No. 13-10203-BAH
                                                                                                                              Chapter 13

John Ashley and
Ruth Ashley,
             Debtors

*Mark P. Cornell, Esq.*
*Concord, New Hampshire*
*Attorney for Debtor*

*Edward C. Dial, Jr., Esq.*
*The Schreiber Law Firm, LLC*
*Salem, New Hampshire*
*Attorney for Creditor*
*Santander Consumer USA, Inc.*
*as Servicer for Sovereign Bank*

## MEMORANDUM OPINION

### I.  INTRODUCTION

The Court held a hearing on September 9, 2015, on the Debtors' Motion for Entry of an Order to Show Cause, an Order to Hold Santander Consumer USA, Inc. and Sovereign Bank in Contempt and for Sanctions for Failure to Comply with the Terms of the Debtors' Confirmed Chapter 13 Plan (Doc. No. 89) (the "Motion") and on the Objection to the Motion filed by Santander Consumer USA, Inc. as servicer for Sovereign Bank (together "Santander") (Doc. No. 92) (the "Response").  At the conclusion of the hearing, the Court ordered the Debtors to file a statement of attorney's fees by September 16, 2015, and Santander to file any response thereto by September 23, 2015 (Doc. No. 93).  The Court then took the Motion under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

On January 29, 2013, the Debtors filed a chapter 13 bankruptcy petition. At the time of their bankruptcy filing, the Debtors owed Santander money on account of a car loan secured by the Debtors' 2007 Dodge Durango (the "Durango"). On February 6, 2013, Santander filed a proof of claim indicating it was owed a total of $10,502.37 plus 9.95% interest (POC 1). The Debtors' amended chapter plan (Doc. No. 21) (the "Plan") provided at ¶ 7 for the modification of Santander's claim and required payment of Santander's claim in full, with 9.95% interest, over the first twenty-four months of the Debtors' Plan.[1] The Plan further provided at ¶ 12.G[2] (emphasis added):

> G.  **Release of Certificate of Title Upon Satisfaction of Secured Claim:**
>
> 1. <u>Upon satisfaction or other discharge of a security interest in a motor vehicle</u>, mobile home, or in any other property of the bankruptcy estate <u>for which the certificate of title is in the possession of a secured creditor, such creditor shall within fourteen (14) days after demand</u> and, in any event, within thirty (30) days of receipt of the notice of the entry of the discharge order, <u>execute a release of its security interest on said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the debtor or to the attorney for the debtor.</u>
>
> 2. <u>Confirmation of this plan shall impose an affirmative and direct duty on each such secured creditor to comply with this paragraph. This provision shall be enforced in a proceeding filed before this court</u> and each such creditor consents

---

[1] The Debtors explain that they sought to pay Santander in full during the first twenty-four months of the Plan based upon the age and condition of the Durango, which was the collateral for Santander's loan. The Debtors did not believe that the Durango would last the full sixty months of the Debtors' Plan. The Debtors wanted the ability to pay the claim in full early in the Plan so that the vehicle could be sold or traded as part of the purchase of a new vehicle.

[2] Paragraph 12.G is a uniform provision of this district's standard chapter 13 plan form. See LBR 3015-1; LBF 3015-1A.

> to such jurisdiction by failure to file any timely objection to this plan. <u>Such an enforcement proceeding may be filed by the debtor in this case either before or after the entry of the discharge order</u> and either before or after the closing of this case.  The debtor specifically reserve [sic] the right to file a motion to reopen this case under 11 U.S.C. § 350 to pursue the rights and claims provided for therein.

Without objection by Santander, the Plan was confirmed on May 10, 2013 (Doc. No. 25) (the "Confirmation Order").  The Confirmation Order provided that the "[t]erms of the Debtors' Amended Plan not expressly modified by this order are incorporated into this order and made a part hereof by reference."  The Confirmation Order further provided:

> 4. The secured claim regarding the 2007 Dodge Durango held by Santander Consumer USA will be modified. The debtors will pay the remaining balance due of $10,502.00 with 9.95% interest over 24 months, for total payments of $11,625.00.

On December 2, 2013, the Court entered an order allowing claims (Doc. No. 44), which provided at ¶ II.C and C.3 (emphasis added):

> **C.** **Secured Claims:** The following filed secured claims shall receive a distribution from the funds submitted by the Debtor. To the extent that the allowed amount shown below reflects arrearages to cure defaults pursuant to 11 U.S.C. § 1322(b)(3) or (5), such defaults shall be deemed cured upon payment of the allowed amount plus additional amounts due pursuant to 11 U.S.C. § 1322(e); the applicable underlying security interest(s) remain unimpaired. <u>To the extent that the allowed amount shown here reflects full payment of the secured claim pursuant to the plan, the security interest shall be discharged upon payment of the allowed amount and any applicable interest in full.</u> Regarding any secured claim listed here for which the Debtor(s) have proposed that the creditor retain its lien, should subsequent events occur that result in relief being granted from the stay of 11 U.S.C. § 362(a) and liquidation of the collateral, then if that creditor seeks to assert an unsecured deficiency claim resulting from the liquidation of the collateral, that creditor shall move to amend its previously allowed secured claim to reflect the unsecured deficiency. The Court may then allow the unsecured deficiency claim for plan distribution purposes.
>
> **C.3.** **Modified Secured Claims Paid Through the Plan:**
>
> 1. Santander Consumer USA ($10,502.00 at 9.95% interest over 24 months)      11,625.00

Santander received notice of the Trustee's motion seeking allowance of the claims in the Debtors' case (Doc. No. 37) and did not object.  The Debtors subsequently modified the Plan, but the provisions regarding Santander's claim did not change (Doc. No. 71).

3

By the spring of 2015, the Debtors had made more than twenty-four payments under the Plan, and Lawrence Sumski, the chapter 13 trustee (the "Trustee"), had paid Santander $11,625, the entire amount owed on its claim. The Debtors represent that they made several attempts to obtain the title to the Durango after Santander was paid in full. On or about April 22, 2015, Debtors' counsel sent a letter to Santander at the address listed on its proof of claim demanding release of the title. Debtors' counsel received no response to the letter.

On April 28, 2015, the Debtors filed a motion seeking to incur debt in order to purchase a replacement vehicle for the Durango (Doc. No. 84). The Court granted the motion (Doc. No. 85). The Debtors proceeded to purchase a replacement vehicle, using the Durango as a trade-in for the purchase. The dealership, which took the Durango in trade, also attempted to obtain the title to the vehicle from Santander without success. The dealer also contacted the Trustee seeking help in getting the title from Santander; the Trustee referred the matter to Debtors' counsel.

In August 2015, the Debtor contacted the Trustee directly, expressing his frustration in not getting the title from Santander. The Trustee was unsure why Santander was not turning over the title as required by the Confirmation Order as Santander had been paid in full several months earlier.

On August 20, 2015, the Debtors filed the Motion seeking to hold Santander in contempt for failing to comply with the Confirmation Order, which required it to release its lien and forward the certificate of title to the Debtors or their counsel nearly four months earlier. Only after the Motion was filed did Santander comply with the Plan and Confirmation Order. In its Response filed with the Court on September 1, 2015, Santander indicated it had produced the certificate of title and released the lien shortly after the Motion was filed. Santander did not explain its delay in releasing its lien and producing the title.

At the hearing, Santander's counsel had no further explanation for why Santander failed to comply with the Confirmation Order, other than to surmise that the Debtors' account had been "coded" for sixty months (the typical length of a chapter 13 plan) and not the twenty-four provided in the Plan for paying Santander's claim in full.[3]  Santander acknowledged at the hearing that the lien should have been released and the title should have been timely turned over after its claim was paid in full.  At the hearing, Santander noted that the contract between the parties provided for the payment of attorney's fees, and it indicated that it was willing to pay such fees as it was clear that Debtors' counsel had spent some time in getting the issue resolved.  Santander did not believe that any further sanction was warranted, however, as there was no evidence or claim by the Debtors that Santander had acted similarly in other cases.

At the hearing, it further came to light that, by the time Santander released the lien and produced the certificate of title, the Debtors had already been forced to repurchase the Durango from the dealership.  The Debtors' counsel indicated that the Debtors intend to sell the vehicle, and did not anticipate losing any money on the transaction.

After the hearing concluded, as ordered by the Court, Debtors' counsel filed a statement of his attorney's fees showing that he spent 5.6 hours of time on the Motion and incurred $1,430 in fees (Doc. No. 94).  The statement indicated that "[n]o time was billed for services that would have been provided to the clients had Santander Consumer USA provided the lien release and title in a timely manner, such as sending the title to the client when it was sent to the undersigned.  The above services only relate to the Motion for Contempt."  Santander filed a response with the Court indicating that "a check for $1,430 has been sent to debtors' counsel" (Doc. No. 96).

---

[3]  Santander's counsel—who comported himself professionally throughout the hearing—further noted that the account still showed a balance due of three cents, but he did not believe that this was the reason that Santander delayed in releasing its security interest.

**III. DISCUSSION**

Through the Motion, the Debtors sought the release of Santander's lien and the delivery of the certificate of title, which the terms of the Plan and Confirmation Order required. By the time of the hearing, Santander had complied with the Debtors' request and the Confirmation Order's requirements. Accordingly, Santander was no longer in violation of any court order by the time of the hearing and was no longer in contempt. The Debtors, however, are not satisfied with Santander's late compliance with the Confirmation Order; they seek the imposition of sanctions beyond the attorney's fees already voluntarily paid by Santander.

The Trustee informed the Court at the hearing that this is a recurring problem, i.e., creditors not timely releasing liens and turning over titles, although not necessarily with Santander, but with creditors in general, and many times debtors are left to deal with this issue by themselves, either because the debtors are pro se or by the time the issue arises they are no longer represented by counsel.

The First Circuit Court of Appeals has recently ruled that bankruptcy courts have the inherent power to sanction parties for noncompliance with court orders. Charbono v. Sumski (In re Charbono), 790 F.3d 80, 83, 87 (1st Cir. 2015). The First Circuit explained that bankruptcy courts have the authority to issue "punitive, non-contempt sanctions," as part of "a court's inherent power to police itself" and to vindicate its judicial authority, "without resort to the more drastic sanctions available for contempt of court." Id. at 85 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991)). "Exercising this authority, courts may levy sanctions (including punitive sanctions) for such varied purposes as disciplining attorneys, remedying fraud on the court, and preventing the disruption of ongoing proceedings." Id. at 85-86. The First Circuit also explained that courts are not ordinarily required to find bad faith before imposing such sanctions, except if the sanction includes an award of attorney's fees. Id. at 87-88 (noting that

6

heightened justification is necessary where an inherent power sanction has the effect of reversing the "American Rule" on fees, i.e., that litigants ordinarily pay their own lawyers).  In exercising their inherent power, courts must act "circumspectly and with particular regard for due process protections . . . [which] include notice and the opportunity to be heard."  Id. at 88.[4]

In this case, Santander does not dispute that it was bound by the terms of the Debtors' Plan and the Confirmation Order.  See 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor ….").  Together the Plan and the Confirmation Order required Santander to "execute a release of its security interest" on the certificate of title, upon satisfaction of its security interest in the Debtors' motor vehicle, "within fourteen (14) days after demand." Plan ¶ 12.G.  They also provided that Santander had "an affirmative and direct duty … to comply with this paragraph" and that the Debtors could enforce these provisions in "a proceeding filed before this court."

The Debtors contend that their counsel sent Santander a letter on April 22, 2015, demanding release of the title.  Thus, pursuant to the Plan and Confirmation Order, Santander should have released its lien in early May.  The record makes clear that the lien was not released and the title was not produced until after August 20, 2015.  In the interim, the Debtors made attempts themselves to get the title, and the dealer who sold the Debtors a new vehicle also tried to obtain the title.  In addition, parties contacted the Trustee directly hoping that he would intervene in the matter.

---

[4] Santander has not asserted any due process violations, and none are apparent.  The Plan and Confirmation Order are clear that the Debtors could seek enforcement of the relevant plan provisions in a proceeding in this Court.  The Debtors made it plain in the Motion that they were seeking sanctions against Santander.  In its written Response, Santander acknowledged the sanction request and argued that sanctions were not justified in this case.  Santander also appeared at the hearing through counsel and argued the sanctions issue, conceding only that an award of attorney's fees would be appropriate.

Santander has offered no real explanation for why it failed to comply with terms of a court order. The Court will assume its failure to comply was not the result of any bad faith, absent evidence to the contrary, but rather its noncompliance was due to inattention or oversight. Whatever the reason for the noncompliance, Santander must face some consequence for violating the Confirmation Order, a violation which persisted over several months after Santander's compliance came due. In the Court's view, a sanction is warranted, as the Debtors' counsel puts it, to "send a message" to Santander (and other secured creditors) that they must timely comply with their obligations under a confirmed chapter 13 plan. As the First Circuit has stated, "[w]hen a court confronts a violation of its own order, 'it may choose from a broad universe of possible sanctions.'" Charbono, 790 F.3d at 89 (quoting Velazquez Linares v. United States, 546 F.3d 710, 711 (1st Cir. 2008)). Courts must give "individualized consideration to the particular circumstances" and "balance a myriad of factors." Charbono, 790 F.3d at 89 (quoting Velazquez Linares, 546 F.3d at 711, and Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)).

While the Debtors did not present evidence that they have suffered any quantifiable out-of-pocket damages (other than incurring attorney's fees), they clearly have been frustrated and inconvenienced for a period of several months. Santander was paid $11,265 in complete satisfaction of its claim no later than April 2015; Debtors' counsel thereafter made a written demand for the release and title; the Debtors purchased a new vehicle and attempted to finance the purchase in part by using the Durango as a trade-in; Santander failed to timely release the lien and turn over the title as required by the Confirmation Order; the Debtors, their counsel, and the dealer attempted to resolve the issue from April 2015 through August 2015 to no avail; and the Debtors ultimately had to repurchase the Durango from the dealership and are now forced to sell it in an attempt to recoup those funds.

Under these circumstances, the Court finds that an appropriate inherent power, non-contempt, punitive sanction is $11,625—the amount paid to Santander in respect of its allowed secured claim under the Plan—in addition to the amount of $1,430, which Santander already voluntarily agreed to pay to the Debtors on account of their attorney's fees, for a total award of $13,055.  This amount will allow the Debtors to pay the unnecessarily incurred attorney's fees and to make a substantial payment to the Trustee toward the remaining balance owed under their Plan,[5] which the Court finds an appropriate sanction given the circumstances.  In awarding such a sanction, the Court acknowledges that, by the time of the hearing, Santander had complied with the Confirmation Order requirement to release its security interest and deliver the certificate of title to the Debtors or their attorney.  However, Santander was unable to provide any real explanation for its noncompliance and has not outlined any mitigating circumstances.  Santander's noncompliance has wasted the time and resources of the Debtors, their counsel, the Trustee, the dealership, and this Court, and for that reason, Santander must face some consequence.  The Court hopes that this sanction is sufficient to ensure Santander's future compliance with the Court's orders.  In addition, the Court believes that the sanction will serve to deter other similarly situated creditors from engaging in similar activity.

## IV.  CONCLUSION

For the reasons outlined above, the Court will issue a separate order granting the Motion and imposing a sanction against Santander in the amount of $13,055, $1,430 of which has already been paid to Debtors' counsel voluntarily, and $11,625 of which shall be paid to the

---

[5]  Pursuant to the Plan, the Debtors were to pay a total of $46,660 ($1,616/mo. for the first ten months and $610/mo. for the remaining fifty months).  As of today's date, the Debtors should have made twenty-two payments, which should total $29,580, leaving an outstanding balance due of $17,080.

Trustee.[6]  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

      ENTERED at Manchester, New Hampshire.


Date:   October 14, 2015                    /s/ Bruce A. Harwood
                                                       Bruce A. Harwood
                                                       Chief Bankruptcy Judge

---

[6] The Court will impose joint and several liability against Santander Consumer USA, Inc. and Sovereign Bank for the sanction. Sovereign Bank was properly served with a copy of the Motion in accordance with Federal Rule of Bankruptcy Procedure 7004(h), as made applicable by Federal Rule of Bankruptcy Procedure 9014. Sovereign Bank failed to file a separate response to the Motion or appear at the hearing. The proof of claim filed in this case was filed by "Santander Consumer USA, Inc., Servicer for Sovereign Bank" (POC 1-1). Attached to the proof of claim was a copy of the certificate of title, which listed Sovereign Bank as the lienholder. Also attached to the proof of claim was a limited power of attorney, which appointed Santander Consumer USA, Inc. as Sovereign Bank's "Agent and Attorney-in-Fact." For those reasons, the Court finds the imposition of joint and several liability for the sanction to be appropriate.